UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PEDRO CORDERO,

                    Plaintiff,

                                        Civil No. 13-7068(NLH)

        v.
                                        **OPINION**

COMMISSIONER OF SOCIAL
SECURITY,
                    Defendant.

**APPEARANCES:**

ADRIENNE FREYA JARVIS, ESQUIRE
800 NORTH KINGS HIGHWAY
SUITE 304
CHERRY HILL, NEW JERSEY 08034

        *Counsel for Plaintiff*

SERGEI ADEN, ESQUIRE
SOCIAL SECURITY ADMINISTRATION
OFFICE OF GENERAL COUNSEL
REGION II
26 FEDERAL PLAZA
ROOM 3904
NEW YORK, NY 10278

        *Counsel for Defendant*

**HILLMAN, District Judge**

        This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), to review the final decision of the Commissioner of the

Social Security Administration, denying Plaintiff's application

for Disability Insurance Benefits ("DIB") under Title II of the

Social Security Act.  42 U.S.C. § 401, et seq.  The issue

before the Court is whether the Administrative Law Judge ("ALJ")
erred in finding that there was "substantial evidence" that
Plaintiff was not disabled at any time since his alleged onset
date of disability, January 7, 2008.  For the reasons stated
below, this Court will reverse the decision of the ALJ and
remand the matter for further proceedings.

I.    <u>BACKGROUND AND PROCEDURAL HISTORY</u>

Plaintiff was born on January 9, 1970.  (R. at 242.) He
completed the ninth grade in Puerto Rico and took special
education classes.  (R. at 45.)  He understands some English but
does not speak English.  (Id.)  From 1999 to 2007, Plaintiff
worked in a factory, first as a "floor person" and then on the
assembly line.  (R. at 270.)

Plaintiff filed applications for DIB and Supplemental
Security Income in June 2010, claiming that he was unable to
work as of January 7, 2008.  (R. at 242-47.)  Plaintiff was
advised by letter dated November 29, 2010 that he was granted
Supplemental Security Income based on a finding that Plaintiff
was disabled as of July 1, 2010.  (R. at 75.)  Also on November
29, 2010, Plaintiff was advised that his claim for DIB was
denied on the basis that there was insufficient evidence to find
his condition disabling on any date through December 31, 2008,

2

the date he was last insured.  (R. at 70.)  Plaintiff requested

reconsideration of his claim for DIB, but this request was

denied on March 3, 2011.  (R. at 98.)

Plaintiff thereafter sought a hearing by an Administrative

Law Judge (hereafter, "ALJ").  On April 9, 2012, a hearing began

before the assigned ALJ was continued because Plaintiff became

ill.  (R. at 62.)  A hearing was then held on July 13, 2012

before another ALJ.  (R. at 39.)  The second ALJ issued a

written decision in which he determined that Plaintiff was not

disabled.  (R. at 25-31.)  Plaintiff appealed the decision.  The

Appeals Council reviewed the ALJ's decision and denied

Plaintiff's request for review, thus rendering it final. (R. at

1.)  Plaintiff now seeks this Court's review of the ALJ's denial

of his application for DIB.

**1.    The Medical Evidence Before the ALJ**

The medical evidence consists of, inter alia, emergency

room records, radiology records, the medical report of Steven

Klein, D.O., and progress notes from Osborn Family Health

Center.  Plaintiff's appeal focuses primarily on the report of

Dr. Klein, a physician for the State of New Jersey Department of

Labor and Workforce Development, Division of Disability

Determination Services.  (R. at 401-404.)  Dr. Klein conducted a

3

physical examination of Plaintiff on January 31, 2008.  In his report, Dr. Klein noted that Plaintiff is 5 feet, 11 inches tall, weighs 273 pounds, and complains of asthma.  Dr. Klein also noted the following:

1. Reduced grip strength of 3/5 with Plaintiff's left upper extremities and 4/5 with his right upper extremities;
2. Positive acromioclavicular shear test;
3. Reduced range of left shoulder abduction at fifty percent, with nonspecific shoulder pain;
4. Reduced forward flexion limited to fifty degrees;
5. Bilateral side bending limited to ten degrees;
6. Pathological Romberg's sign;
7. Inability to walk heel-to-toe; and
8. Palpable thyroid.

(R. at 403.)  In his report, Dr. Klein then stated that "[o]n the basis of the above evaluation, this individual suffers from:

1. A 2-month known history of non-insulin dependent diabetes mellitus.
2. Asthma.
3. The need for vision correction.
4. Very palpable thyroid.
5. Hypertension.
6. Elevated cholesterol.
7. Decreased movement of his lumbosacral spine, possibly due to some nonspecific osteoarthritic problem."

(Id.)

Plaintiff also refers to notes from the Osborn Family Health Center, where Plaintiff was treated in July and October 2008.  (R. at 549-552.)  These records indicate that Plaintiff was obese, had hypertension, hypothyroidism, Type 2 diabetes,

4

and elevated cholesterol.  (Id.)  Plaintiff reported weight
gain, fatigue, and that he falls asleep easily.  (R. at 550.)

     The ALJ also had the testimony of Plaintiff from a hearing
in July 2012.  At that time, Plaintiff testified that he "lost
[his] nerves," has depression, diabetes, a blackened lung, and
high blood pressure.  (R. at 43.)  Plaintiff also noted problems
with his heart, his thyroid, and his legs.  (Id.)  He testified
that he was diagnosed with these conditions in 2008 and 2009.
(Id.)  He further testified that his legs constantly fall asleep
(R. at 45), that he has difficulty sleeping because he cannot
breathe when he lies down (R. at 47), that he uses a special
asthma machine to put air into his nose at night (id.), that he
could not walk long distances as of the hearing date but could
walk "[a]ll the time" in 2008 (R. at 53),[1] and that he first
started using a cane six months to a year prior to the hearing
(R. at 54.)

     **2.   The ALJ's Finding**

     The ALJ found that although Plaintiff had several medically
determinable impairments, including non-insulin dependent

----

[1] Despite this testimony, Plaintiff also testified that after he
stopped working in 2008, he had problems walking because he had
back pain shooting down into his legs, and that he would have to
stop two to three times per block when walking.  (R. at 53.)

diabetes mellitus, hypertension, high cholesterol, vision
impairment, obesity, mild degenerative changes at the lumbar
spine, and a thyroid condition, these impairments or combination
of impairments were not "severe" under the applicable
regulations.  (R. at 27.)  According to the ALJ, Plaintiff did
not have an impairment or combination of impairments that
significantly limited Plaintiff's ability to perform basic work-
related activities for twelve consecutive months.  (Id.)

　　　In so finding, the ALJ concluded that Plaintiff's
statements "concerning the intensity, persistence and limiting
effects of [his] symptoms are not credible to the extent they
are inconsistent with finding that the claimant has no severe
impairment or combination of impairments[.] . . ."  (R. at 30.)
The ALJ noted in this regard that Plaintiff's medical treatment
in 2008 was scarce, that he did not comply with prescribed
medications, and that he did not use "any measures besides
treatment[.]"  (Id.)  The ALJ also noted that no treating or
consulting medical source reported that Plaintiff had been
disabled for at least twelve consecutive months.  (Id.)
Accordingly, the ALJ Pico that Plaintiff was not entitled to
DIB.

6

II. **DISCUSSION**

    A. **Standard of Review**

    Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual findings where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). It means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consol. Edison Co., 305 U.S. at 229, 59 S. Ct. 206).

    A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (internal

7

citations omitted).

When faced with conflicting evidence, the Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all of the pertinent medical evidence, explaining his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, "an ALJ must also consider and weigh all of the non-medical evidence before him." Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981)).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> "[U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'"

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting

Arnold v. Sec'y of HEW, 567 F.2d 258, 259 (4th Cir. 1977)).
Although an ALJ, as the fact finder, must consider and evaluate
the medical evidence presented, Fargnoli, 247 F.3d at 42,
"[t]here is no requirement that the ALJ discuss in its opinion
every tidbit of evidence included in the record," Hur v.
Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).  In terms of
judicial review, a district court is not "empowered to weigh the
evidence or substitute its conclusions for those of the fact-
finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir.
1992), cert. denied, 507 U.S. 924, 113 S. Ct. 1294, 122 L. Ed.
2d 685 (1993).  However, apart from the substantial evidence
inquiry, a reviewing court is entitled to satisfy itself that
the Commissioner arrived at his decision by application of the
proper legal standards.  Friedberg v. Schweiker, 721 F.2d 445,
447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793
(D.N.J. 1981).

**B.   Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes
of an entitlement to a period of disability and disability
insurance benefits as the "inability to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected

9

to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under this definition, a plaintiff qualifies as disabled "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis. See 20 C.F.R. § 404.1520. This five-step process is summarized as follows:

1.  If the claimant currently is engaged in substantial gainful activity, he will be found "not disabled."

2.  If the claimant does not suffer from a severe medically determinable impairment, or if he fails to meet the duration requirement in 20 C.F.R. § 404.1509, or if he does not have a combination of impairments that is severe and meets the duration requirement, he will be found "not disabled."

3.  If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix

10

1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.  If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5.  Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, he will be found "disabled."  If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(a)(4).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step evaluation involves a shifting burden of proof.  See Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  See id.  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the [Commissioner] to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).

11

C.    **The Step-Two Determination**

As mentioned above, at step two of the five-step inquiry, the ALJ must determine whether the claimant has a medically severe impairment or conditions of impairment.  Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003) (citations omitted).  Rather than focusing on what constitutes a severe impairment, the Social Security Regulations and case law focus on what is "not severe."  Id.  "'[A]n impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities.'"  Id. (internal quotations omitted).[2]  "Basic work activities are 'abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling.'"  Id. (internal quotation omitted).

The purpose of the step-two inquiry is to dispose of groundless claims.  Newell, 347 F.3d at 546.  Therefore, an ALJ may only find that an impairment or combination of impairments is "not severe" if "the evidence establishes a slight abnormality or a combination of slight abnormalities which have

---

[2] When a claimant has two or more concurrent impairments, the impairments should be considered in combination to determine whether the combined effect is severe, even if each impairment may itself be non-severe.  20 C.F.R. § 404.1522-23.

12

'no more than a minimal effect on an individual's ability to work.'"   Id.   In other words, if the claimant presents evidence of anything more than a "slight abnormality," then the claimant meets his burden at step two and the ALJ should continue to step three of the sequential evaluation.   Id.   "Reasonable doubts on severity are to be resolved in favor of the claimant."   Id.

In addition to considering the severity of any medically determinable impairments at step two, an ALJ must also consider whether such impairments or combination of impairments meet the duration requirement of 20 C.F.R. § 404.1509.   This regulation provides: "Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."   20 C.F.R. § 404.1509. If a claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, the ALJ must find that the claimant is not disabled.   20 C.F.R. § 404.1520(a)(4).

**D.   Analysis**

According to the ALJ, the objective medical evidence did not support Plaintiff's allegation of disability, and he therefore denied Plaintiff's claim at step two of the sequential

13

evaluation.  Plaintiff argues that the ALJ's finding was
erroneous for a multitude of reasons, which the Court addresses
in turn.

### 1.    Analysis of Dr. Klein's January 2008 Report

Plaintiff argues that the ALJ erroneously imputed to Dr.
Klein an opinion that Plaintiff did not have a "severe"
impairment.  (Pl.'s Br. 9.)  In his decision, the ALJ wrote that
"Dr. Klein found no severe impairments after finishing the
examination of the claimant."  (R. at 29.)  According to
Plaintiff, Dr. Klein never concluded that Plaintiff's
impairments were not severe, and the ALJ therefore
mischaracterized the evidence.  (Pl.'s Br. 10.)  Concededly, the
report of Dr. Klein does not expressly address the severity of
Plaintiff's impairments.  But in stating that Dr. Klein found no
"severe" impairments, it appears the ALJ was merely summarizing
the findings in Dr. Klein's report.  The ALJ clearly considered
the substance of Dr. Klein's report, not just a conclusion
regarding severity contained therein.  The Court does not find
the statement at issue in the ALJ's decision undermines the
evidence on which the opinion rests.

That said, although the ALJ apparently considered the
report of Dr. Klein in its entirety, the Court finds that the

14

ALJ failed to cite substantial evidence to support his finding that the medically determinable impairments identified in Dr. Klein's report were not severe.  In considering severity, the ALJ found that Plaintiff failed to demonstrate that any of the impairments satisfied the duration requirements of 20 C.F.R. 404.1509, without any discussion of the effect of any of the impairments, or combination of impairments, on Plaintiff's ability to perform basic work activities pursuant to 20 C.F.R. § 404.1520(a) and 20 C.F.R. § 404.1521-23.  (R. at 27.)  Thus, it appears that the ALJ collapsed the severity inquiry into one analysis – i.e., he found that because none of the impairments lasted more than twelve months, they were "not severe," irrespective of their impact on Plaintiff's ability to perform basic work activities.

Although Plaintiff argues that the ALJ's determination of severity was erroneous, neither party specifically focuses on the duration issue even though the ALJ clearly was concerned about duration in assessing severity.  In this regard, the ALJ first noted that Plaintiff "did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, [Plaintiff] did not have a severe

15

impairment or combination of impairments." (R. at 27.)  He also
said: "In terms of the claimant's alleged pain and other
symptoms, the claimant failed to prove that he had an impairment
or combination of impairments that has lasted at least 12
consecutive months beginning on January 7, 2008, through the
date last insured[.]"  (R. at 30.)  The ALJ likewise stated: "As
for the opinion evidence, no treating or consulting medical
source has reported that the claimant has been disabled for at
least 12 consecutive months, beginning at alleged onset date
through the date last insured."  (Id.)  In summarizing his
decision, the ALJ again noted: "There has been no longitudinal
treatment for at least 12 consecutive months, nor does the
record demonstrates [sic] severity of any of the conditions on
or before December 31, 2008."  (Id.)

       The Court has reviewed the record on appeal and notes that
the medical records contain evidence that Plaintiff suffered
from several medically determinable conditions that were likely
to have lasted more than twelve months.[3]  Specifically, medical

---

[3] The Commissioner argues that Plaintiff's complaints to Dr.
Klein concerned asthma and not musculoskeletal conditions, but
an ALJ may consider any impairments about which he receives
evidence even if the impairment is not listed in the claimant's
application for DIB.  Rutherford v. Barnhart, 399 F.3d 546, 552-
53 (3d Cir. 2005) (citing Skarbek v. Barnhart, 390 F.3d 500, 504
(7th Cir. 2004)).

records from August 13, 2007 indicate that Plaintiff has "[n]ew onset diabetes" (R. at 395), Dr. Klein's report in January 2008 states that Plaintiff had a two-month known history of non-insulin dependent diabetes mellitus (R. at 403), and reports from Osborne Family Medical Center in July and October 2008 indicate that Plaintiff had Type 2 diabetes mellitus (R. at 549, 551.)[4]  Given these records, there was evidence that Plaintiff had diabetes for at least ten months, starting at his alleged disability date in January 2008 through October 2008.  As such, it is not clear to the Court how the ALJ concluded that there was substantial evidence that Plaintiff's diabetes was not expected to last twelve months.  See 20 C.F.R. § 404.1509 (impairment "must have lasted or must be expected to last for a continuous period of at least 12 months.").  Thus, the ALJ's conclusion that Plaintiff's diabetes failed to meet the duration requirement is not supported by substantial evidence.

Likewise, the Court finds that there was not substantial evidence that Plaintiff's hypertension, high cholesterol, thyroid condition and obesity were not likely to last more than

---

[4] "Both type 1 and type 2 [diabetes mellitus] are chronic disorders that can have serious, disabling complications that meet the duration requirement."  20 C.F.R. Pt. 404, Subpart A, Appendix 1.

17

twelve months in duration, when the aforementioned medical records document the existence of these conditions at least from January 2008 through October 2008.  (See R. at 403[5], 549-50[6], 551-52[7].)  Hypertension, high cholesterol, thyroid conditions and obesity are medically determinable impairments that could, depending on the severity and effects, result in a disability determination.  20 C.F.R. Pt. 404, Subpart A, Appendix 1, ¶¶ 3.00(I) (obesity), 4.00(H) (hypertension and hyperlipidemia), 9.00(B)(2) (thyroid).  The ALJ's decision does not address any of these conditions in detail, does not mention their physical effects on Plaintiff, if any, and does not consider their effects, either individually or in combination, on Plaintiff's ability to perform basic work activities.  20 C.F.R. § 404.1521

---

[5] Dr. Klein's report of January 2008 notes that Plaintiff had hypertension, elevated cholesterol, and a "very palpable thyroid."  (R. at 402.)  As to obesity, although Dr. Klein did not expressly conclude in his report that Plaintiff was "obese," he noted that Plaintiff is five feet, eleven inches tall and reported that he was 273 pounds.  (Id.)  Plaintiff argues that he was "obese" pursuant to the Social Security Regulations, which define obesity as having a body mass index over 30, because Plaintiff's body mass index was 37.  (Pl.'s Br. 9 n.4.)

[6] The October 2008 records from Osborne Family Medical Center indicate that Plaintiff was obese and had hypertension, elevated cholesterol, and a thyroid condition.  (R. at 549-50.)

[7] The July 2008 records from Osborne Family Medical Center indicate that that Plaintiff was obese and had hypertension, elevated cholesterol, and hypothyroidism.  (R. at 551-52.)

(impairment is not severe if it does not significantly limit ability to perform basic work activities).

Plaintiff had also reported to Dr. Klein that he had asthma since age fourteen, and the report of Dr. Klein from January 2008 and the records from Osborne Family Medical Center in July 2008 both indicate that Plaintiff has asthma, which records support a finding that Plaintiff could have met the duration requirement of 20 U.S.C. § 404.1509.  Nonetheless, the ALJ concluded that asthma was not a severe impairment, notwithstanding the absence of any discussion concerning its effect on Plaintiff's ability to perform basic work activities.[8]

Moreover, if the ALJ did consider the severity of the seven medically determinable impairments at issue independently of their duration, his written decision does not sufficiently set forth the rationale for finding these conditions -- either

_____

[8] With respect to the findings in Dr. Klein's report concerning vision and decreased movement of Plaintiff's lumbosacral spine, the Court notes that Plaintiff does not cite any other medical records that discuss these conditions during the relevant time period.  With respect to visual disorders, a report of an eye examination is required to be evaluated by an ALJ.  20 C.F.R. 404, Subpart P, Appendix 1, ¶ 102.00(4).  The medical records do not contain a report of an eye examination, and therefore the ALJ had no evidence to evaluate any alleged vision disorders. With respect to Plaintiff's lumbosacral spine impairment, there are no medical records to demonstrate that Plaintiff's limited movement lasted or was likely to last more than twelve months.

individually or in combination -- were not severe.  As stated
above, an impairment is not severe if it does not significantly
limit the claimant's physical ability to do basic work
activities.  20 C.F.R. § 404.1521(a).  The ALJ's decision is
devoid of analysis concerning the physical effect of any of
Plaintiff's medically determinable impairments, nor does the
decision address the combined effect of any of the impairments.
The decision does not analyze Plaintiff's ability to perform
"basic work activities" in light of the impairments.  As such,
the Court is unable to ascertain whether there was substantial
evidence to support the ALJ's finding.[9]

The Court notes the Commissioner's argument that the ALJ
relied on a lack of evidence in finding that Plaintiff failed to
show he was significantly limited in his ability to perform

---

[9] Plaintiff also argues that the ALJ misstated the January 2008
report of Dr. Klein, having written in his final decision that
Dr. Klein found "no abnormalities" when the report detailed a
number of abnormalities.  (Pl.'s Br. 9.)  Dr. Klein's report
recounts several issues based upon his physical examination of
Plaintiff.  These include limitations in movement, such as
limited shoulder movement, reduced grip strength, and an
inability to perform heel-to-toe movement.  (R. at 402-03.)  The
ALJ did not mention, much less discuss, these abnormalities in
his written decision and it is thus unclear whether they were
considered.  On remand, the ALJ should discuss these
abnormalities in determining whether they support a finding of
disability.

basic work activities. (Def.'s Br. Pursuant to Local Rule 9.1 6.) A lack of medical evidence is "very strong evidence" that a claimant was not disabled, because a claimant must show not just diagnosis, but functional limitations. Lane v. Comm'r of Soc. Sec., 100 F. App'x 90, 95-96 (3d Cir. 2004). Even in Lane, however, where none of the claimant's treating physicians opined that the claimant was unable to work, the ALJ concluded that the claimant's impairment was severe and proceeded through the five-step sequential evaluation. By contrast, in the present case the ALJ never addressed Plaintiff's ability to perform basic work activities given the diagnoses in the medical records.

Accordingly, the Court will remand the case for further analysis and explanation concerning the step two determination.

### 2. Plaintiff's Credibility

Plaintiff argues that the ALJ failed to give his testimony proper credence, but the Court rejects this assertion. As to pain, Plaintiff testified that he experienced various forms of pain, and the ALJ clearly addressed that testimony. (R. at 28-29.) As already mentioned, the ALJ found that Plaintiff suffered from seven medically determinable impairments. (R. at 27.) Nevertheless, the ALJ noted that Plaintiff's inaction concerning his medical conditions seemed to belie his assertion

21

that any of the seven impairments, or combination thereof, was disabling as of the relevant time period. (R. at 30.)  The ALJ specifically noted that Plaintiff's treatment in 2008 was "very scarce,"[10] that Plaintiff did not have surgery in 2008, and that

---

[10] In Newell, the Third Circuit addressed the relevance of infrequent medical visits in determining whether a claimant is disabled.  The Third Circuit noted Social Security Regulation 96-7p, which states that an ALJ "'must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment.'"  Newell, 347 F.3d at 547.  In Newell, the Third Circuit found "adequate" the plaintiff's explanation that she failed to seek treatment because she could not afford treatment.  Id.  By contrast, here, the record indicates that Plaintiff did not consistently take his medication because he could not afford it, but there is no evidence concerning a failure to seek treatment due to lack of funds.

    That said, the Court notes that the ALJ cited the medical records concerning Plaintiff's "non-compliance" as a basis for discrediting Plaintiff's alleged pain and other symptoms.  (R. at 30.)  One of the medical records the ALJ relied upon for this conclusion was a progress note dated August 15, 2007, which states that Plaintiff "has been noncompliant with his medications secondary to finances" and that Plaintiff "would most likely not be compliant with insulin" because he "has problems paying for medication[.]"  (R. at 559.)  The other medical record relied upon by the ALJ indicated that Plaintiff was "noncompliant" but contains no further explanation concerning the nature of noncompliance.  (R. at 549.)  Although the record later states that Plaintiff did not follow a diet (R. at 550), it is not clear that the earlier reference to noncompliance concerned diet rather than medication.  To the extent the ALJ drew an inference about Plaintiff's symptoms based on his failure to take medications, when there is evidence in the record explaining that Plaintiff's failure to take medications was due to a lack of finances, the ALJ erred in part

Plaintiff did not attempt to address his conditions by, for example, lying flat on his back, standing intermittently or sleeping on a board.  (Id.)  Because the ALJ made a credibility determination and discussed the basis for his decision, the Court gives this finding "great deference" and will not overturn the ALJ's decision.  See Metz v. Fed. Mine Safety & Health Review Comm'n, 532 F. App'x 309, 312 (3d Cir. 2013) ("Overturning an ALJ's credibility determination is an 'extraordinary step,' as credibility determinations are entitled to a great deal of deference.")(internal citation omitted); Atl. Limousine, Inc. v. NLRB, 243 F.3d 711, 718 (3d Cir. 2001) ("where credibility determinations are based on the ALJ's assessment of demeanor, those determinations are entitled to great deference as long as relevant factors are considered and resolutions explained.")

### 3.   Opinion of Medical Experts

Finally, Plaintiff contends that the ALJ should have obtained testimony from medical experts given that Dr. Klein did not express an opinion about Plaintiff's functional limitations.

---

in weighing credibility.  The Court, however, cannot conclude that the ALJ erred in the ultimate finding that Plaintiff was not credible given all of the other evidence upon which the ALJ relied in making his determination.

(Pl.'s Br. 13-14.)  Plaintiff contends that the ALJ did not understand Dr. Klein's objective examination findings and a medical expert would have been able to interpret such findings. (Id. at 14.)

The Court rejects this argument as well.  SSR 83-20 states that "[i]n addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability."  SSR 83-20, 1983 WL 31249, at *1.  The Third Circuit has applied SSR 83-20 and required a medical advisor when "the impairment at issue is slowly progressing and the alleged onset date is so far in the past that obtaining adequate medical records is impossible."  Thelosen v. Comm'r of Soc. Sec., 384 F. App'x 86, 91 (3d Cir. 2010).  In this case, there is no dispute about the date of onset of January 7, 2008 and no deficiency in the medical records.  Therefore, this is not a case requiring a medical expert.

III. **CONCLUSION**

In determining whether there is substantial evidence to support an ALJ's decision concerning disability insurance benefits, the Court defers to the ALJ's evaluation of the evidence, assessment of credibility of witnesses, and reconciliation of conflicting evidence.  Diaz v. Comm'r of Soc.

Sec., 577 F.3d 500, 506 (3d Cir. 2009).  However, in this case,
the ALJ failed to provide a sufficiently detailed explanation
for the findings in his August 14, 2012 decision, so the Court
is unable to determine whether the decision was supported by
substantial evidence.  Consequently, it is necessary to remand
the case to the Commissioner for further consideration and
explanation.  The decision of the ALJ will be reversed, and
remanded for further consideration consistent with this Opinion.
An accompanying Order will be issued.


Dated: December 19, 2014          s/ Noel L. Hillman
                              NOEL L. HILLMAN, U.S.D.J.




At Camden, New Jersey

25